NEW YORK CITY TUNNEL AUTHORITY, Appellant, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Respondents, et al., Defendants.

Argued May 23, 1946; decided July 23, 1946.

*John J. Bennett, Corporation Counsel (Henry Epstein, Charles C. Weinstein* and *Andrew Bellanca* of counsel), for appellant. I. Defendants are under a common-law duty to adapt their structures at their own expense to the requirements of the public improvement undertaken by plaintiff. The obligation to rearrange utility structures in connection with public improvements is an essential incident of every street franchise. (*Transit Comm.* v. *Long Island R. R. Co.,* 253 N. Y. 345; *Matter of Deering,* 93 N. Y. 361; *New Orleans Gas Co.* v. *Drainage Comm.,* 197 U. S. 453; *Bell Telephone Co.* v. *Penn. P. U. C.,* 129 Pa. Super. 529; *N. J. Bell Tel. Co.* v. *Delaware River Joint Comm.,* 125 N. J. L. 235; *Delaware River Joint Commission Case,* 342 Pa. 119; *Phila. Electric Co.* v. *Commonwealth,* 311 Pa. 542.) II. Defendants are not entitled to undisturbed permanent enjoyment of specific room in or under public streets. (*New Orleans Gas Co.* v. *Drainage Comm.,* 197 U. S. 453; *Transit Comm.* v. *Long Island R. R. Co.,* 253 N. Y. 345; *N. Y. Inter-Urban W. Co.* v. *City of Mount Vernon,* 185 App. Div. 305; *Gas Light & Coke Co.* v. *Columbus,* 50 Ohio St. 65; *Union Light, Heat & Power Co.* v. *L. & N. R. Co.,* 257 Ky. 761; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746; *National Water-Works Co.* v. *City of Kansas,* 28 F. 921; *Anderson* v. *Fuller,*

51 Fla. 380; *Scranton Gas Co.* v. *Scranton City*, 214 Pa. 586.) III. The tunnel approaches are a part of the public highway. (*Matter of Deering*, 93 N. Y. 361.) IV. The form of financing selected for the tunnel does not deprive the project of its " governmental " nature. Plaintiff is a State agency. (*Robertson* v. *Zimmermann*, 268 N. Y. 52; *People ex rel. Bridge Authority* v. *Davis*, 277 N. Y. 292; *Bush Terminal Co.* v. *City of New York*, 282 N. Y. 306; *Delaware River Comm.* v. *Colburn*, 310 U. S. 419; *Commissioner of Internal Revenue* v. *Estate of Shamberg*, 144 F. 2d 998, 323 U. S. 792; *Commissioner of Internal Revenue* v. *Estate of White*, 144 F. 2d 1019, 323 U. S. 792; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.*, 59 F. 2d 48, 287 U. S. 644.) V. The case does not call for determination whether there is room in the law of street franchises for the theory of so-called " proprietary " government activities. (*City of New York* v. *New York Telephone Co.*, 278 N. Y. 9.) VI. The power to collect tolls does not diminish the privileged character of plaintiff's activities. (*People ex rel. Bridge Authority* v. *Davis*, 277 N. Y. 292; *Commissioner of Internal Revenue* v. *Estate of Shamberg*, 144 F. 2d 998, 323 U. S. 792; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.*, 59 F. 2d 48, 287 U. S. 644; *Robia Holding Corp.* v. *Walker*, 257 N. Y. 431; *Huse* v. *Glover*, 119 U. S. 543.) VII. The statute leaves the burden of the relocation expense with the utility companies. (*Westchester El. R. R. Co.* v. *W. Co. P. Comm.*, 255 N. Y. 297; *Tilton* v. *State of New York*, 259 App. Div. 507, 285 N. Y. 601; *Matter of Town of Cheektowaga Grade Crossings*, 259 App. Div. 141, 283 N. Y. 687; *Western New York Water Co.* v. *Brandt*, 259 App. Div. 11, 283 N. Y. 686; *Town of Oyster Bay* v. *Moses*, 248 App. Div. 598, 273 N. Y. 631; *C. B. & Q. Ry.* v. *Drainage Comm'rs.*, 200 U. S. 561; *New Orleans Gas Co.* v. *Drainage Comm.*, 197 U. S. 453.)

*Leander I. Shelley* and *Daniel B. Goldberg* for The Port of New York Authority, *amicus curiæ*. I. The construction of the Queens Midtown Tunnel is a governmental function. (*Brush* v. *Commissioner*, 300 U. S. 352; *Atkin* v. *Kansas*, 191 U. S. 207; *Interstate Bridge Authority* v. *Ham's Estate*, 92 N. H. 277; *Robia Holding Corp.* v. *Walker*, 136 Misc. 358, 230 App. Div. 666, 257 N. Y. 431; *Commissioner of Internal Revenue* v. *Estate of White*, 144 F. 2d 1019, 323 U. S. 792; *Commis-*

*sioner of Internal Revenue* v. *Estate of Shamberg,* 144 F. 2d 998, 323 U. S. 792; *Dysart* v. *City of St. Louis,* 321 Mo. 514; *Butler* v. *Perry,* 240 U. S. 328; *Rex* v. *Inhabitants of the County of Nottingham,* 2 Levinz 112; *Rex* v. *Inhabitants of the City of Norwich,* 1 Strange 179; *Robia Holding Corp.* v. *Walker,* 257 N. Y. 431.) II. The collection of tolls does not diminish the governmental character of the construction of the Queens Midtown Tunnel. (*Brush* v. *Commissioner,* 300 U. S. 352; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.,* 59 F. 2d 48, 287 U. S. 644; *Commissioner of Internal Revenue* v. *Estate of Shamberg,* 144 F. 2d 998, 323 U. S. 792.) III. The construction of the tunnel is no less a governmental function because it was performed by an authority. (*Robertson* v. *Zimmermann,* 268 N. Y. 52; *People ex rel. Bridge Authority* v. *Davis,* 277 N. Y. 292; *Atkin* v. *Kansas,* 191 U. S. 207; *Gaynor* v. *Marohn,* 268 N. Y. 417; *Wells* v. *Housing Authority of Wilmington,* 213 N. C. 744; *Bachmann* v. *New York City Tunnel Authority,* 47 N. Y. S. 2d 767, 263 App. Div. 945, 288 N. Y. 707, 317 U. S. 675; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.,* 59 F. 2d 48, 287 U. S. 644; *Commissioner of Internal Revenue* v. *Harlan,* 80 F. 2d 660; *Tranter* v. *Allegheny County Authority,* 316 Pa. 65; *Miller* v. *The Port of New York Authority,* 18 N. J. Misc. 601; *LeBeau Piping Corp.* v. *City of New York,* 170 Misc. 644.)

*Horace R. Lamb, Thomas H. Beardsley, Carl M. Abromeit, Irving W. Young, Earle M. Simonson* and *Ralph W. Brown* for respondents. I. The provisions of the Tunnel Authority Act (L. 1936, ch. 1) clearly show that the Legislature intended that the expense of protecting and relocating the respondents' public utility structures should be borne by plaintiff as a part of the total cost of the tunnel project. The act contains adequate authorization and direction to pay such expenses either as the cost of the acquisition of respondents' properties by purchase or condemnation or as damages to real estate necessary for the tunnel project. (*Gaynor* v. *Marohn,* 268 N. Y. 417; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *City of Detroit* v. *Detroit & Canada Tunnel Co.,* 92 F. 2d 833; *Trenton* v. *New Jersey,* 262 U. S. 182; *Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Sun Publishing Assn.* v. *Mayor,* 152 N. Y. 257; *Matter of Rapid Transit R. R. Comm.,* 197 N. Y. 81; *Litchfield Const.*

*Co.* v. *City of New York,* 244 N. Y. 251; *Public Service Comm.* v. *City of New York,* 268 App. Div. 121, 294 N. Y. 951; *Transit Comm.* v. *Long Island R. R. Co.,* 253 N. Y. 345; *City of New York* v. *New York Telephone Co.,* 278 N. Y. 9; *Los Angeles* v. *Los Angeles Gas Corp.,* 251 U. S. 32.) II. The Tunnel Authority Act expressly authorizes plaintiff to "take", i.e., acquire, respondents' utility structures by purchase or condemnation and to pay respondents the reasonable value thereof. (*Matter of City of New York [Newport Ave.],* 218 N. Y. 274; *N. Y. Electric Lines* v. *Empire City Subway,* 235 U. S. 179; *People* v. *O'Brien,* 111 N. Y. 1; *Ghee* v. *Northern Union Gas Co.,* 158 N. Y. 510; *Rochester & L. O. W. Co.* v. *City of Rochester,* 176 N. Y. 36; *Levy* v. *McClellan,* 196 N. Y. 178; *Trustees of Southampton* v. *Jessup,* 162 N. Y. 122; *People ex rel. City of New York* v. *N. Y. R. Co.,* 217 N. Y. 310; *U. S.* v. *General Motors Corp.,* 323 U. S. 373; *Oswego & Syracuse R. R. Co.* v. *State,* 226 N. Y. 351.) III. The act also authorizes plaintiff to pay claims for damages to real estate required for the tunnel project. (*Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634; *Transit Comm.* v. *Long Island R. R. Co.,* 253 N. Y. 345; *Public Service Comm.* v. *City of New York,* 268 App. Div. 121, 294 N. Y. 951; *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.,* 214 N. Y. 526.) IV. The sovereign police power of the State to regulate respondents' public utility structures has not been delegated to plaintiff. (*Matter of Rapid Transit R. R. Comm.,* 197 N. Y. 81; *Sun Publishing Assn.* v. *Mayor,* 152 N. Y. 257; *Sammons* v. *City of Gloversville,* 175 N. Y. 346; *Augustine* v. *Town of Brant,* 249 N. Y. 198; *Ohio* v. *Helvering,* 292 U. S. 360; *Helvering* v. *Powers,* 293 U. S. 214; *People ex rel. City of New York* v. *N. Y. R. Co.,* 217 N. Y. 310.) V. The so-called rule of common-law duty upon which plaintiff relies has no application.

FULD, J. Plaintiff, New York City Tunnel Authority, a public benefit corporation, was created for the purpose of constructing the Queens Midtown Tunnel (L. 1936, ch. 1; Public Authorities Law, art. 3, tit. 6). In the construction of the approaches to the tunnel it was necessary to relocate certain public utility facilities maintained by defendants in public streets within the area of the approaches. This work was made neces-

sary because the grades of certain streets were changed and the street lines of others altered. Above and below the surface of these streets, defendants under their franchise rights maintained various pipes, cables, ducts, conduits, steam mains and other public utility structures. Plaintiff notified defendants to take the necessary steps at their expense to maintain, protect, restore, and, if necessary, to relocate their facilities affected by the construction of the tunnel. Defendants refused to comply unless reimbursed for their expense. The work of reconstruction and relocation was performed by plaintiff's contractors and in some instances by defendants who received payment from the contractors. It was agreed that these arrangements should not prejudice the legal rights of the parties with respect to the ultimate liability for the expense.

The amount expended by plaintiff for this work aggregated $536,200, of which $535,500 is applicable to the facilities of the respondents and $700 is applicable to the facilities of the other two defendants, and plaintiff brought this action to recover these amounts with interest.

In Special Term, plaintiff moved for summary judgment and respondents made cross motions to dismiss the complaint. All motions were denied by Mr. Justice COLLINS " in view of the serious, doubtful legal and factual issues raised ". The Appellate Division, First Department, upon appeal by respondents, unanimously reversed upon questions of law and dismissed the complaint, and, upon appeal by plaintiff, affirmed the order of Special Term denying the motion for summary judgment.

Plaintiff's appeal from the judgment dismissing the complaint as to respondents also brings up for review, under section 580 of the Civil Practice Act, the order affirming the Special Term order which denied plaintiff's motion for summary judgment.

The Appellate Division, reasoning that plaintiff was exercising a proprietary and not a governmental function in the construction and operation of the tunnel, ruled that the relocation of defendants' facilities was necessarily a part of the cost to be borne by the authority. With that determination we disagree.

Plaintiff, a board consisting of three members, appointed by the mayor and serving without compensation, was designated as " a body corporate and politic constituting a public benefit corporation " (Public Authorities Law, § 627), and authorized to

construct, maintain and operate various vehicular tunnels in the city of New York (§ 629, subd. 9; § 626, subd. 8). It was given the power to sue and be sued; to acquire, hold and dispose of personal property for its corporate purposes; to acquire, in the name of the city, by purchase or condemnation, real property, including that of public utility corporations, necessary or convenient for its corporate purposes; to make by-laws for the management and regulation of its affairs; to use with the consent of the city the employees and facilities of the city, paying the latter its agreed proportion of the cost or compensation; to make contracts; to accept grants or loans from Federal agencies; to fix and collect tolls, rentals and other charges; to borrow money and issue bonds; and "to do all things necessary or convenient to carry out the powers expressly given" (§ 629, subd. 17).

The authority's construction contracts are made by public letting in the manner provided in the New York City Charter for city contracts (§ 635). The city comptroller handles the money of the authority (§ 636). The act also contains a commitment by the State to the bondholders to the effect that it will not authorize a competitive project (§ 638). Its property and activities are tax exempt (§ 641) and its bonds are subject only to transfer and estate taxes (§ 641, subd. (2) and § 641-a). Its existence continues until all its bonds and liabilities are discharged and at that time all its rights and properties pass to the city of New York (§ 627).

Pursuant to the authorization contained in the law, plaintiff prepared plans for the Queens Midtown Tunnel which were approved by the city's board of estimate and apportionment. The tunnel was laid out under the East River from East 40th Street, Manhattan, to Fifth Street, Queens, and within the lines of First Avenue from East 40th Street to East 37th Street, Manhattan, and Borden Avenue from Fifth Street to Vernon Boulevard, Queens. *The facilities in question were located in certain of these streets. No part of them was under the East River.*

Since its completion, plaintiff has operated the tunnel and charged a toll for its use.

The "fundamental common-law right applicable to franchises in streets" is that a utility company must relocate its facilities in the public streets when changes are required by public neces-

sity. (*Transit Comm.* v. *Long Island R. R. Co.* [*Bell Ave.* case], 253 N. Y. 345, 353.) The rule finds succinct statement in that case (253 N. Y., at p. 351): "Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge. (*Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*, 166 U. S. 226; *New Orleans Gas Light Co.* v. *Drainage Commission*, 197 U. S. 453; *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Commrs.*, 200 U. S. 561; *Lake Shore & Michigan Southern R. Co.* v. *Clough*, 242 U. S. 375; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *City of Minneapolis*, 232 U. S. 430; *National Water Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921; *Matter of Petition of Deering*, 93 N. Y. 361; *Chace Trucking Co.* v. *Richmond Light & R. R. Co.*, 225 N. Y. 435.) All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made."

If this rule is not to apply here, the distinction must lie in the nature of the project, the character of the authority, or the intent of the Legislature as shown by the enabling statute.

So far as the project is concerned, it is plainly a public highway improvement since a highway can be carried across a body of water only by bridge or tunnel. The rule cited is peculiarly applicable to street changes required for improved use for the streets themselves. (*Matter of Petition of Deering*, 93 N. Y. 361.) The project is, therefore, one which would have required respondents to relocate at their own expense, had it been undertaken directly by either the State or the city. Nor do the respondents contend otherwise. As to its character — the statute provides that the authority shall be "a body corporate and politic" (§ 627), a description adequate for the city itself. Beyond that, the Legislature has declared (§ 641, subd. [1]): "It is hereby found, determined and declared that the creation of the authority and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York, for the improvement of their health and welfare, and for the increase of their commerce and

prosperity, and is a public purpose, and the authority shall be regarded as performing an essential governmental function in the exercise of the powers conferred upon it by this title * * * ''; and it has further announced (§ 641-a): '' * * * the project is an essential part of the public highway system and the authority will be performing an essential governmental function in the exercise of the powers conferred by this title * * *.'' These provisions make clear that the authority is more than a private corporation; indeed, as has already been judicially observed, it is an agent of the State. (*Bachmann* v. *New York City Tunnel Authority*, 47 N. Y. S. 2d 767, 769, affd. 263 App. Div. 945, appeal dismissed, 288 N. Y. 707 [1942], certiorari denied, 317 U. S. 675.)

Nor does the circumstance that tolls are charged in order to finance the improvement change either the character of that improvement or the character of the authority. We may take judicial notice of the fact that, when this authority was created, many municipalities of the State were struggling to finance public improvements which could not be undertaken upon their own direct credit, either because of constitutional debt limitations or because of the disinclination or inability to burden further the traditional taxpayer. The imposition of a toll or charge for the use of the new improvement does not make the operation a business enterprise carried on for profit, as the Appellate Division suggested. Rather, it creates a new class of taxpayers thought to be more justly charged with the cost of the new improvement. The Legislature's choice of the incidence of this taxation should not, and does not, change applicable principles. Imposing no new burdens on respondents, it was certainly not intended to relieve them of obligations to which they were subject by well-established rules. (Cf. *Robertson* v. *Zimmermann* [*Buffalo Sewer Authority* case], 268 N. Y. 52; *Brush* v. *Commissioner*, 300 U. S. 352.)

The Legislature might, of course, have required the authority to pay the expenses of the character here involved — or to reimburse those who laid them out — and respondents contend that the statute so provides. This argument is two-pronged. Respondents argue, first, that the Legislature failed to delegate to the authority expressly its own police power and that in the absence of such a delegation the authority was not intended to

be vested with it; and, second, that the power of condemnation given to plaintiff (§ 629) with respect to "easements", "structures", "franchises" — as well as the power to pay for damages to real estate — carries a fair intendment that the authority was to pay for the charges here in question. It seems to us that neither contention has merit.

The enabling act, it is true, does not contain any delegation of police power *in haec verba,* but such language is at best rare; it is not contained in any of the statutes governing similar projects, to which our attention has been called. The legislation does, however, contain the language — to which we have already referred — clothing this authority with the attributes of delegated sovereignty as a State agency. Such language would be fully adequate for the purpose even apart from the wellsettled rule of construction — announced in the *Bell Avenue* case — that the power is to be implied unless expressly negatived (253 N. Y., at pp. 354–355).

The conclusion here reached is in accord with decisions in other jurisdictions. (*New Jersey Bell Tel. Co.* v. *Delaware River Joint Comm.,* 125 N. J. L. 235; *Delaware River Joint Commission* case, 342 Pa. 119; *Phila. Electric Co.* v. *Commonwealth,* 311 Pa. 542; *Bell Telephone Co.* v. *Penn. P. U. C.,* 139 Pa. Sup. Ct. 529.)

The judgment and order should be reversed and plaintiff's motion for summary judgment granted, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and THACHER, JJ., concur; DYE, J., taking no part.

Judgment accordingly.