In the Matter of the CITY OF NEW YORK, Relative to Acquiring Title to GILLEN PLACE, from Bushwick Avenue to Jamaica Avenue, in the Borough of Brooklyn.

Supreme Court, Special Term, Kings County, June 15, 1949.

*Thomas H. Beardsley, Earl G. Clarke* and *Frank T. Jennings* for Consolidated Edison Company of New York, Inc., claimant.

*Jackson A. Dykman, Augustus J. Wheeler* and *Herman Meltzer* for Brooklyn Union Gas Company, claimant.

*John P. McGrath, Corporation Counsel (Harry E. O'Donnell, Louis L. Funk* and *Philip R. Coltman* of counsel), for the City of New York.

UGHETTA, J. This proceeding was initiated under the provisions of title E of chapter 15, of the Administrative Code of the City of New York, to close a public street, Gillen Place, between Bushwick Avenue and Jamaica Avenue. Upon such closing, all easements, public and private, were extinguished and the city simultaneously became owner in fee of the land formerly comprising the street.

For some time prior to the institution of this proceeding the land on both sides of Gillen Place was owned by the City of New York and used by the board of transportation in connection with its operation of the public transit system.

Gillen Place was discontinued as a street, and title to the land lying therein acquired by the city in fee for the purpose of erecting thereon a garage and bus depot. Such improvements will be constructed, in part, over the entire bed of the discontinued street. The board of transportation is to reimburse the city for the entire cost and expense of the proceeding.

At the date of vesting in this proceeding, and for a long time prior thereto, the Consolidated Edison Company of New York, Inc., and the Brooklyn Union Gas Company owned and maintained under the surface of Gillen Place, pursuant to franchises duly granted, certain ducts, cables, mains, structures and equipment used by these utility companies in the furnishing of their respective services.

These companies filed claims in this proceeding, seeking compensation for the destruction of their franchise rights, and the taking of their structures and facilities in the closed street.

The statute authorizing this proceeding provides (Administrative Code, § E15–3.0, subd. b): " Compensation and recompense shall be made to the respective owners of the real property affected or damaged by reason of any such closing * * *."

Subdivision 5 of section E15–1.0, of the statute defines real property as including: " * * * all surface and subsurface structures within closed streets and all easements and hereditaments, corporeal or incorporeal, and every estate, interest and right, legal and equitable, in lands, and every right, interest, privilege, easement and franchise relating to the same * * *."

The corporation counsel contends that these claimants have sustained no damages which are " legally compensable ", and asks that the claims be dismissed. Several cases are cited by the city as sustaining this contention, among them *New York City Tunnel Authority* v. *Consolidated Edison Co.* (295 N. Y. 467); *Transit Comm.* v. *Long Island R.R. Co.* (253 N. Y. 345); *Matter of Deering* (93 N. Y. 361); and *People ex rel. Woodhaven Gas Light Co.* v. *Deehan* (153 N. Y. 528).

It will be noted that these cases reiterate the common-law rule that a utility company, when placing its structures in the public street, pursuant to franchise, does so at the risk of being required to relocate them if necessitated by the regulation, control, improvement or extension of the street or highway system.

The *New York City Tunnel Authority* case (*supra*) held the utility was required to pay for relocation made necessary by

construction of a tunnel. The court commented (p. 475): "So far as the project is concerned, it is plainly a public highway improvement since a highway can be carried across a body of water only by bridge or tunnel."

The *Transit Commission* case (*supra*) held that a utility was required to pay for relocation of its pipes in connection with a grade-crossing elimination, a regulation of the highway " to preserve and enhance the safety of the traveling public " (pp. 349-350). After expressing the common-law rule, the court stated (pp. 351-352): " This common-law rule, however, does not go so far as to place the cost of removal and relocation upon the company, when the change is required in behalf of other public service corporations *or in behalf of municipalities exercising a proprietary instead of a governmental function.* The departure from the rule arises out of the distinction between public welfare and private enterprise of a *quasi* public nature." (Italics supplied.)

In *Matter of Deering* (*supra*) a gas company was required to pay for relocation of its pipes because of the regulating and grading of a street.

The *Deehan* case (*supra*) held merely that a gas company possessing a franchise to lay its mains in the streets of a village was entitled to place its conductors, upon compliance with reasonable regulations, not only in the streets existing at the time the franchise was granted, but also in the streets as subsequently enlarged or changed.

The State was required to pay compensation for destruction of a telephone line by the appropriation of land for a reservoir under the Barge Canal Act (L. 1903, ch. 147; *New York Telephone Co.* v. *State of New York,* 169 App. Div. 310, affd. 218 N. Y. 738).

The tax cases cited by the city in support of its assertion that the property of utility companies laid in streets pursuant to franchise is not real property for the appropriation of which compensation must be made, are of no significance in view of the comprehensive definition found in the statute here controlling.

The Massachusetts and Indiana cases cited by the city are not applicable since the rights of utilities in the streets in those jurisdictions differ materially from those conferred in this State, as was noted in *New York Telephone Co.* v. *State of New York* (*supra,* p. 316).

Operation of the transit system is a proprietary, not a governmental, activity of the city (*City of New York* v. *New York Telephone Co.*, 278 N. Y. 9).

In the latter case the court rejected the city's assertion that relocation of the utility's facilities was required by a highway improvement, and held that it was necessitated by construction of subway entrances, and that the cost of such relocation must be borne by the city.

The court stated (p. 12): " Where public interest requires, the sovereign, acting in a governmental capacity, may compel relocation of the facilities of public service corporations, and the cost thereof, in the absence of statutory provisions to the contrary, must follow the rule of the common law and be borne by the utility."

The court continued (pp. 14–15): "We think the relocation of defendant's underground structures was not a necessary part of the highway improvement. On the contrary, the construction of entrances to the subway was a proprietary activity of the city. * * *· No authority has been delegated by the Legislature to the city as owner of the subway to require relocation of public utility facilities at the expense of the utility. In relocating defendant's underground structures, the city acted solely in its proprietary capacity as owner and operator of the subway under the provisions of the Rapid Transit Act, and, having acted in that capacity, it must bear the cost."

Since the city here acquires the fee of the street for use in connection with its operation of the transit system, a proprietary activity, it cannot escape its liability to compensate the utilities for appropriation of their facilities under the common-law rule that a utility must bear the burden of changes required in the regulation or improvement of a highway. Moreover, the statute here controlling specifically provides that compensation must be made for property such as that owned by these utilities and affected by this proceeding.

These claimants must be awarded just compensation for their property affected or damaged in this proceeding. This compensation is measured by the cost to them of relocating their respective facilities. The corporation counsel does not dispute the accuracy of the figures as to such cost submitted by the claimants on the trial. Accordingly the Consolidated Edison Company is awarded the sum of $3,773.75 and the Brooklyn Union Gas Company the sum of $18,082.33.

The corporation counsel is directed to prepare the tentative decree on or before June 20, 1949.