Gerald Nolan, J.
On or about March 3, 1949, the plaintiff and defendant entered into an agreement in writing providing that the plaintiff would supply and deliver water to the defendant for the extinguishment of fires and other fire purposes through hydrants then set upon its mains in the City of New Rochelle and other hydrants which might be set from time to time. The agreement provided that such hydrants might be used for other municipal purposes, that the plaintiff would erect, from time to time such other hydrants as might be required, without extending its pipes, and that plaintiff might lay additional pipes and would maintain the hydrants and supply water, for a compensation provided therein.
Paragraph “Ninth” of the agreement provided as follows: ‘ ‘ When the City shall determine to make any change in the line or grade of, or to do any other public construction authorized by the City in any street which has been accepted by the City and in which there is an established grade, it will immediately notify the Water Company in writing, giving the particulars thereof. Thereupon the Water Company shall examine the same and promptly give notice to the City of resettings, replacements and repairs made necessary thereby and furnish with such notice an estimate of the cost thereof. If the City instructs the Water Company to proceed with the work in question, the Water Company shall do so and upon the completion of such work the Water Company shall certify the actual cost of the work in detail. If in any contract year the aggregate cost of all work so ordered by the City shall not exceed the sum of $600 the Water Company shall bear the total aggregate cost thereof but if the said aggregate cost in any contract year shall exceed $600 the City shall reimburse the Water Company for *303 the total excess over said $600 upon verification thereof by the City.” The agreement of March 3, 1949, was amended and extended by subsequent agreements which did not affect the provisions of paragraph “Ninth”, which were in full force and effect at the times hereinafter referred to.
On August 15, 1955, the Council of the City of New Rochelle adopted a resolution authorizing a petition to the Board of Supervisors of the County of Westchester to request the State of New York to allocate funds “ from the Federal Aid Improvement Program for Secondary Roads, for the construction and widening of Quaker Ridge Road ”, a street in the City of New Rochelle which had been accepted by the city and which then had an established grade. Apparently, as the result of a petition, pursuant to that resolution, the city was advised that funds had been allocated for the project, and the Department of Public Works of the county requested the city to secure the necessary rights of way for the widening.
On February 6, 1957, an ordinance was adopted by the City Council by which the city declared its intention “ to widen and pave Quaker Ridge Road from North Avenue to Weaver Street with funds allocated by the State of New York from the Federal Aid Program for the paving of Quaker Ridge Road; the cost of the acquisition of the necessary rights of way to be paid for by the City of New Rochelle ” and the City Manager was authorized and directed to take action to acquire the property necessary for its widening. On July 7, 1958, a communication from the County Commissioner of Public Works, stating that the State Department of Public Works had approved Quaker Ridge Road as eligible as a secondary Federal aid project was presented to the Board of Supervisors. The communication also stated that the Commissioner had received copies of an agreement, to be executed by the county, to maintain Quaker Ridge Road as a county road at county expense, after completion of the project by the State, and that plans therefor had been completed, submitted to the State and approved by the City of New Rochelle, which was then engaged in securing the necessary rights of way. By resolution adopted on that date the Board of Supervisors recommended that the maintenance agreement be signed by the County Executive, authorized the State Department of Public Works to apply to the Federal Government for the necessary funds, and agreed, on completion of the construction to maintain Quaker Ridge Road as a county road. On December 4, 1957, the City Council had adopted a resolution authorizing the City Manager to negotiate for property on Quaker Ridge Road for street widening purposes. That resolu *304 tion recited the fact that the Council had previously, on February 6,1957, “ declared its intention to widen and pave Quaker Ridge Road * * * with funds. allocated by the State of New York and the Federal Aid Program.” On July 16, 1958, the City Council adopted a resolution by which it agreed with the State Department of Public Works that the authorities of New Rochelle would not in the future permit encroachments on the right of way for the improvement of Quaker Ridge Road. This agreement was required pursuant to a ruling made by the Bureau of Public Roads with respect to Federal aid projects in cities or villages.
On or about May 12, 1959, the city presented a petition to this court asking for a judgment of condemnation, and authorizing the taking of the property necessary for the widening of Quaker Ridge Road. The petition stated that it was the intention of the city “in good faith to complete the improvements herein referred to ” and for which the properties were to be condemned. Judgment of condemnation was granted on May 29, 1959, and on June 1, 1959, the city informed the County Commissioner of Public Works that it had acquired title to the properties required for the project. On July 29, 1959, the State of New York entered into a contract with the Colonial Asphalt Paving Corp., of Mount Vernon, New York, for the performance of the construction work, which was subsequently completed pursuant thereto, and which involved changes in both the line and the grade of Quaker Ridge Road and would have necessitated resettings and replacements of plaintiff’s mains and hydrants in that highway. In the meantime the fact that the reconstruction and widening of the highway would require relocation of water mains and hydrants had been brought to plaintiff’s attention by the defendant and a dispute arose between them as to responsibility for the cost of such relocation. On September 29, 1959, the parties entered into a stipulation, as follows:
“1. The City of New Rochelle, without prejudice to any of its rights or defenses in any future action or proceeding, requests the New Rochelle Water Company to relocate its mains, hydrants and appurtenances on Quaker Ridge Road as may be required by the plans and specifications for the widening and regrading of Quaker Ridge Road,- said request being made so that the construction of Quaker Ridge Road may proceed.
“2. The New Rochelle Water Company, without prejudice to any of its rights or causes of action will relocate its mains, hydrants and appurtenances on Quaker Ridge Road, pursuant to the said request.
*305 1 ‘ 3. Said request and relocation shall not be construed to be a waiver of rights, causes of action or defenses of any of the parties to this agreement and shall be without prejudice to the legal rights of the parties with respect to the ultimate liability for the expense of said relocation.”
Thereafter the plaintiff relocated its facilities at a conceded cost of $29,229.26, over and above costs not recoverable under the contract. The claim of the plaintiff for additional costs in the amount of $954.62 for State and city taxes on receipts and for the cost of salvage of some of plaintiff’s facilities is disallowed. The taxes have not been paid, nor has it been established that they will necessarily be paid, and the cost of the salvage work has not been established. In any event the defendant was only required by the contract to pay for the actual cost of resettings, replacements and repairs made necessary by the change of line or grade or other public construction in the highway. It was not required to pay for the cost of salvage or the value of plaintiff’s facilities which were not relocated nor taxes on payments received by the plaintiff. Plaintiff sues to recover the cost of the relocation of its facilities made necessary by the widening and reconstruction of Quaker Ridge Road. If it has established the cause of action pleaded in the complaint, it will be entitled, under its contract, to be paid $29,229.26, with interest. The question to be determined is whether plaintiff is entitled to recover the conceded cost of the relocation of its facilities by virtue of the provisions of paragraph Ninth of the contract of March 3, 1949. Unless the city is required by that contract to pay the cost of such relocation, it has no liability therefor. Public service corporations, such as the plaintiff, maintain their mains and hydrants in the public streets subject to reasonable regulation and control, and in the absence of legislation, or agreement to the contrary, may be required to relocate their facilities at their own expense whenever the public health, safety or convenience requires the change to be made. (Cf. Matter of Deering, 93 N. Y. 361; Transit Comm. v. Long Is. R. R. Co., 253 N. Y. 345, 355; New York City Tunnel Auth. v. Consolidated Edison Co., 295 N. Y. 467; New Rochelle Water Co. v. State of New York, 10 N Y 2d 287, 291.) In order to succeed in this action, therefore, plaintiff must establish that the defendant determined to make a change in the line or grade of, or to do any other public construction which it had previously authorized in Quaker Ridge Road. Concededly the city instructed the plaintiff to proceed with the work of relocation made necessary by the proposed widening and reconstruction of Quaker Ridge Road, even though that instruction was given *306 without prejudice to its rights or defenses in this action. The evidence establishes also, and I find, that the defendant determined that a change in the line and grade of Quaker Ridge Road should be made, even though it was to be made with Federal aid funds. The evidence also establishes, and I find, that the defendant determined that public construction which it had authorized should be done, although the actual construction work was to be done by others. The question to be decided, however, is whether the determination made was a determination to make a change in the line or grade of Quaker Ridge Road, or a determination to do other public construction, within the meaning of those terms, as provided in the contract of March 3,1949.
In my opinion both questions must be answered in the affirmative and I find accordingly that the defendant did determine to and did make a change in the line and the grade of Quaker Ridge Road, and did determine to do and did other public construction in that highway within the meaning of the contract provisions, which changes and construction necessitated the relocation of plaintiff’s facilities at an actual cost of $29,229.26. Unquestionably the city did not contemplate that it would be required to pay the cost of the reconstruction and paving of the road when it declared its intention to widen and pave Quaker Ridge Road “with funds allocated by the State of New York from the Federal Aid Program.” Its contract with the plaintiff, however, did not provide that it should pay only for the cost of relocations made necessary by changes in line or grade or construction work which it should pay for with its own funds, or which it should effect through its own agents, employees, or contractors. If the city determined to make the change, or do the work and instructed the plaintiff to proceed with the relocation of its facilities, the city was required to pay the cost of such relocation. That the city determined to make the change and take an active part in carrying it into effect is evident from the declarations of intent in the resolutions and ordinance adopted and enacted by its Council, and its declaration in its petition for the judgment of condemnation of the required land that it intended in good faith to complete the widening and paving of the highway. It is true that it did not actually perform the construction work or prepare plans and specifications therefor. Nevertheless it approved the plans, and acquired the necessary land at its own expense. That obligation might have been imposed on the county (Highway Law, § 118, subd. 4) but was required by the county to.be assumed by the city. Unquestionably the city initiated the project when it petitioned the *307 county to request the State to include the proposed widening and paving in the Federal aid secondary road system. Without that request by the county the State would not have acted (Highway Law, § 84), and in view of the broad powers of the city to regulate the use of its streets (former City Home Rule Law, § 11; General City Law, § 20, subd. 7) and particularly since the highway was to be maintained as a county road, the county would not have acted if the city had not approved the plans, and acquired the necessary land (see Westchester County Administrative Code, L. 1948, ch. 852, § 152). Whether the appropriate Federal authorities would have approved the project without the consent of the city is doubtful in view of the provisions of the various Federal Aid Highway Acts which required that the Federal aid secondary road system should be selected by State highway departments and appropriate local road officials in co-operation with each other (see Federal-Aid Highway Act of 1958, U. S. Code, tit. 23, § 103, and similar provisions in the Federal-Aid Highway Acts of 1944, 1948, 1950 and 1956). The Federal-Aid Highway Act of 1956 (Public Law 627, 70 Stat. 374, § 102, subd. [b]) expressly provided that approval should not he given unless the procedures were in accordance with such objectives, as set forth in the Federal-Aid Highway Act of 1950.
Even if the express language of the resolutions, ordinance and petition are disregarded, it is apparent that the city determined to make a change in the line and grade of Quaker Ridge Road in the sense that it determined to cause or effect the change, or bring it about. It is also apparent that it authorized the work necessary to complete the project and took the steps which were necessary on its part to effect the result, which was effected by the State, the county and the city acting in co-operation with each other. It may also be noted that the defendant did instruct the plaintiff to relocate its facilities and that if such instruction had not been given, the cost of relocation might have been paid by the State. (Federal-Aid Highway Act of 1958, § 123.)
In my opinion it was the intent of the parties in entering into their agreement that the plaintiff should be reimbursed under such circumstances and the defendant is not relieved from liability because the actual construction work was done by the State. Such a construction of the contract appears to be reasonable and equitable to both parties, and prevents unfair advantage under the circumstances disclosed (cf. Fleischman v. Furgueson, 223 N. Y. 235, 241).
*308 Plaintiff is entitled to judgment against the defendant in the amount of $29,229.26, with interest at 3% from December 19, 1961, the date of the certification to the defendant of the cost of the work, despite the provision of the contract that interest should be payable at 6%. Section 3-a of the General Municipal Law provides that interest on judgments and accrued claims against municipal corporations shall not exceed 3%. That statute was obviously enacted for the benefit and protection of municipalities and their taxpayers, and in my opinion its benefits may not be waived by municipal officers (cf. Borst v. Town of Sharon, 24 App. Div. 599, 602).