■ CENTRAL HUDSON GAS & ELECTRIC CORPORATION, Plaintiff, v. KINGSTON URBAN RENEWAL AGENCY, Defendant.— *Per Curiam.* This is an action on submitted facts commenced pursuant to CPLR 3222 to determine whether the defendant may require the plaintiff to place its electric lines and facilities underground within an urban renewal area located in the City of Kingston. Shortly after an urban renewal plan was adopted by the City of Kingston, the defendant and the city entered into a co-operation agreement pertaining to a project for redevelopment, concerning which the defendant has directed that plaintiff's utility lines and facilities be placed underground at the redevelopment site. Plaintiff disputes defendant's right to order its utility lines be placed underground, urging defendant's lack of authority to so do. In order to facilitate the completion of the project, the parties additionally stipulated that the utilities be placed underground " and the Defendant has agreed that the Plaintiff is entitled to recover $84,872 ° ° ° if the Court determines that the Defendant

is responsible for the payment therefor." We are unable to agree with defendant's contention that it has authority to direct the installation to be so made. We find no legislative authority granted to the defendant and no power delegated to it in the urban renewal plan as adopted, from whence it must find its jurisdiction to so do. Neither is there any implied authority envisioned or contained within the provisions of articles 15 and XV-A of the General Municipal Law. The placement and location of utility lines is clearly a problem of legislative concern. The clear expression of legislative involvement is expressed in the authority granted to the City of Kingston to require underground installation through its Charter (tit. XIII, § 145, subd. 24, added by L. 1915, ch. 611). While the city may delegate its powers under the Urban Renewal Law (General Municipal Law, § 503-a), we can no where find that such was done and no agency of the municipality has any such power, save the city itself, without express authority. Neither can this defendant be deemed to have derived any independent power to order the underground installation, which it could have been granted, had the city seen fit to so grant when it was called upon to approve or modify the urban renewal plan submitted to it. The powers of the defendant are necessarily subject to the urban renewal plan, in which no provision was made for underground facilities or utilities; and hence the requirement for underground location was not ratified and mandated by exercise of the city's legislative power in approving the plan. In concluding that plaintiff is entitled to judgment, we observe that the holdings in *New York Tel. Co.* v. *City of Binghamton* (18 N Y 2d 152) and *New York City Tunnel Auth.* v. *Consolidated Edison Co.* (295 N. Y. 467, mot. for rearg. den. 296 N. Y. 745) do not call for any different result for in the first case the *city* obviously had specific authority and in the latter case, there was specific power granted by the Legislature. Both parties rely upon and quote from the Urban Renewal Manual, promulgated under the authority of the Federal Housing & Home Agency, which must be followed by all renewal agencies and which requires that urban renewal plans must have included therein provision for "any proposed underground placement of utility lines" (Urban Renewal Manual, § 10-3-2). We further observe that it contemplates a situation where a utility company may not legally be required to pay for underground placement, in which case Federal funds may be provided for such placement. There being no power within this defendant's authority to direct the underground placement and in view of the stipulation of the parties regarding the installation of the utilities and the agreed-upon cost of relocation, plaintiff is entitled to judgment therefor. Judgment granted for plaintiff in the sum of $84,872, with costs. Gibson, P. J., Aulisi and Gabrielli, JJ., concur in memorandum *Per Curiam.* Reynolds and Staley, Jr., JJ., dissent and vote for judgment for the defendant in a memorandum by Reynolds, J.

Reynolds, J. (dissenting). It is not disputed that the plaintiff was obligated to remove and relocate its facilities overhead at its own expense (*New York Tel. Co.* v. *City of Binghamton,* 18 N Y 2d 152; *Transit Comm.* v. *Long Is. R. R. Co.,* 253 N. Y. 345, 351). The question is whether here it can be compelled by the defendant to relocate them underground rather than placing them overhead at the plaintiff's added expense of $84,872. It is conceded by the plaintiff that the City of Kingston, which incidently will bear the cost of the installation if plaintiff prevails, could have ordered the underground installation here involved. While admittedly there is no express authority in articles 15 and XV-A of the General Municipal Law that would allow the defendant, as opposed to the City, to adopt the resolution in question, we find that implied authority permitting such a resolution existed from the broad and sweeping purposes and powers included in such articles (General Municipal Law, §§ 501, 551, 553 [subd. 2], 554, 558; *New York City Tunnel Auth.* v. *Consolidated Edison Co.,* 295 N. Y.

467, mot. for rearg. den. 296 N. Y. 745; see, also, *New Jersey Bell Tel. Co.* v. *Delaware Riv. Joint Comm.*, 125 N. J. L. 235; *Delaware Riv. Joint Comm.*, 342 Pa. 119; *Philadelphia Elec. Co.* v. *Commonwealth*, 311 Pa. 542; *Bell Tel. Co.* v. *Pennsylvania Public Utilities Comm.*, 139 P.a. Super. Ct. 529). The broad scope of the powers delegated to the Agency is not fettered by resort to specific and narrow categorization of authority, but instead permits the agency to take such steps as are reasonable and necessary to carry out the objectives of the urban renewal plan, and the undergrounding of these facilities seems in harmony with the purpose and aims of the urban renewal program. Moreover, while the approved urban renewal plan did not contain a requirement that the utility lines be placed underground, such action was not such a substantial or material change as would constitute an amendment thereto which would require reapproval of the plan pursuant to the provisions of articles 15 and XV-A. Rather it was simply an implementation of the existing plan which the defendant was properly charged with carrying out. Nor does the provision of the Urban Renewal Manual issued under the authority of the Housing and Home Finance Agency requiring the inclusion of the plan of " any proposed underground placement of utility lines " necessarily dictate a different conclusion whereas here the utility must bear the expense rather than the cost thereof being paid for from public funds. Finally, the plaintiff urges that in any event in this case the defendant must bear the cost because underground relocation as opposed to overhead relocation is not required by public necessity, public convenience or public safety. Such an argument ignores the fact that it is using the public streets for its lines subject to the police power of the State in the form of reasonable regulation and control (e.g., *New York Tel. Co.* v. *City of Binghamton, supra*; *Transit Comm.* v. *Long Is. R. R. Co., supra*; see Transportation Corporations Law, § 11 [subd. 1] and that urban renewal is designed to protect and promote " the safety, health, morals and welfare of the people of the state" (General Municipal Law, § 501), which concepts would also include aesthetic considerations (*Berman* v. *Parker*, 348 U. S. 26, 33). We therefore see advanced no " compelling consideration of constitutional right " which would require a finding that the public interest was not served by the instant order (*New York Tel. Co.* v. *City of Binghamton, supra*, pp. 159–160). Accordingly, we vote that judgment be granted for the defendant.