CARMINE D'ANGELO, on Behalf of Himself and All Other Purchasers of Triborough Bridge and Tunnel Authority Discount Toll Plans, Respondent, v TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Appellant.

First Department, January 29, 1985

#### APPEARANCES OF COUNSEL

*Joseph Bulgatz* for appellant.

*Carlo J. Cuevas* of counsel (*Biaggi & Ehrlich,* attorneys), for respondent.

#### OPINION OF THE COURT

FEIN, J.

On May 19, 1980, the defendant-appellant, Triborough Bridge and Tunnel Authority (TBTA), after having published notice of the proposed change in the toll rates as required by the State Administrative Procedure Act, increased the toll rates for various of the bridges and tunnels it operates in and around the City of New York. Toll rates for passenger cars on the Triborough,

Bronx-Whitestone and Throgs Neck Bridges and the Queens-Midtown and Brooklyn-Battery Tunnels were increased from $.75 to $1.

Bridge and tunnel tolls could be paid in cash or with tokens or prepaid tickets. Tokens were sold at the toll plazas in packages of 20, at what amounted to a 5% discount (one free passage was given with the purchase of a roll of 20 tokens). Tickets were sold in books of 20, in various denominations ranging from $.50 to $1.50 and could be used individually, in combinations or supplemented with cash, to pay the toll applicable to the particular user in accordance with the published toll rates for the various facilities. Thus, it would appear that prior to May 19, a passenger vehicle could cross the Triborough, Bronx-Whitestone or Throgs Neck Bridges with a $.75 ticket, but would have to supplement that ticket with $.25 in order to cross the Verrazano Bridge, where the toll then was $1. A two-axle truck with a gross weight of more than 7,000 pounds would be required to present two $.75 tickets in order to cross the Triborough, Bronx-Whitestone or Throgs Neck Bridges to pay the pre-May 19 toll of $1.50, but would be required to add $.50 to cross the Verrazano Bridge where the published toll was $2.

Tickets were usable by both passenger cars and commercial vehicles, but tokens were only sold to and usable by passenger vehicles. Shortly before the increased toll rates became effective, plaintiff purchased a book of 20 tickets of the $.75 denomination. When he attempted to use one of those tickets after May 19, he was required to pay an additional $.25 to meet the then passenger car toll of $1. He thereafter commenced this suit, ostensibly on behalf of himself and "all other holders of Triborough Bridge and Tunnel Authority (TBTA) discount toll plans who may be similarly situated," in which he seeks to compel TBTA to honor toll tickets purchased before the toll increase and to refund the additional $.25 per ticket that ticket holders had been required to pay subsequent to May 19, 1980.

TBTA's motion to dismiss the complaint for failure to state a cause of action was denied by Special Term. The court agreed with plaintiff's contention that by its use of the legend "Good for Passage of Motor Vehicle" on the ticket with the price of $.75 prominently displayed, TBTA promised to permit passage of a vehicle at that price; and by purchasing the book in advance and thus relinquishing the use of his money for that period of time, plaintiff suffered a "detriment", sufficient to warrant effecting an estoppel against TBTA. Special Term rejected TBTA's argument that the words and figures were intended only to indicate

the cash value of the ticket to be used toward the payment of the bridge or tunnel toll. The court held that although TBTA had the inherent power to raise toll rates, it should be estopped from "reneging on its promise" to permit passage at the $.75 price because of the "detriment" plaintiff had suffered in reliance on his reasonable understanding of the bargain offered. The court further reasoned that TBTA received the benefit of the bargain it had made.

We disagree and accordingly reverse the order appealed from and grant the motion to dismiss the complaint.

There can be no doubt that TBTA is a governmental body existing by virtue of title 3 of article 3 (§ 550 *et seq.*) of the Public Authorities Law and as such it has the power to make rules and regulations for the use of its projects and facilities and to establish and collect tolls thereon (Public Authorities Law, § 553, subd 5). The Court of Appeals has ruled that an authority, in setting and collecting charges for the use of its facilities, is engaged in a governmental function (*Carey Transp. v Triborough Bridge & Tunnel Auth.*, 38 NY2d 545, 551-552; *New York City Tunnel Auth. v Consolidated Edison Co.*, 295 NY 467, 476). Although the opinion in *Carey* observed that when the TBTA acts in its toll-fixing capacity, it is to act much like an entrepreneur, that observation was not intended to mean that the toll-fixing and toll-collecting function was not governmental. That comment was made in the context of sustaining the "unlimited toll-fixing power" of the TBTA and the expectation that at least a part of any surplus thus generated would be used to subsidize general mass transportation. The court suggested that in such case the Authority "is to act much like an entrepreneur might, letting economic forces and the maximizing of profit be at least in part its guide" in fixing toll rates. (*Carey Transp. v Triborough Bridge & Tunnel Auth., supra,* p 553.)

Special Term recognized that "[t]he doctrine of estoppel is not applicable to the State acting in a governmental capacity" (*Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 93; 21 NY Jur, Estoppel, § 76, p 110), but nevertheless determined that an estoppel should be applied here upon a detriment/benefit analysis based upon the premise that since plaintiff purchased his book of tickets in advance, he exchanged the present use of his money for a promise of future service and for the convenience of using tickets rather than cash each time he obtained service, while TBTA gained the benefit of present value and use of the money transferred. Special Term denominated plaintiff a "reasonable commuter", and thus constructed a

"reasonableness" test based upon an assumption that passenger car commuters comprised the largest class of ticket users. This record does not support such an assumption, nor does the record provide any factual underpinning for the application of an estoppel. The plaintiff did not acquire any "right of passage for $.75" through the purchase of the book of tickets. No promise of such "right of passage" can reasonably be read into the language of the ticket, nor was plaintiff entitled to rely upon any assumption that those tickets allowed passage at that price over or through any of TBTA's facilities where the toll then in force exceeded $.75 or was subsequently raised to more than $.75. Indeed, not only were toll rates different on different facilities and for different classes of users, but the toll rates on TBTA facilities had been increased in 1972 and 1975 and unquestionably were subject to further adjustment by the TBTA in the exercise of its governmental responsibility relating thereto.

Accordingly, the order of Supreme Court, New York County (Taylor, J.), entered February 2, 1982, denying the defendant's motion to dismiss the complaint for failure to state a cause of action, should be reversed, on the law and the facts, without costs, and the complaint ordered dismissed.

KUPFERMAN, J. P. (dissenting). I would affirm for the reasons given by Taylor, J., at Special Term. I would merely emphasize that the legend on the ticket is "Good for Passage of Motor Vehicle". The effect of the determination by the majority here is to add to it the language "to the extent only of $.75." If this were the purpose of the ticket, it should have been so stated when it was sold by the defendant-appellant.

CARRO and BLOOM, JJ., concur with FEIN, J.; KUPFERMAN, J. P., dissents in an opinion.

Order, Supreme Court, New York County, entered on February 2, 1982, reversed, on the law and the facts, without costs and without disbursements, and the complaint dismissed.