Willlim C. Hecht, Jr., J.
This is a certiorari proceeding to review a determination of the Board of Standards and Appeals which permitted intervenor-respondent, Alpar Realty Corp., to build a 20-story multiple dwelling on a building site located at the northeasterly corner of East 36th Street and the Queens- *871 Midtown Tunnel Exit Roadway. The board modified the ruling of a Borough Superintendent of the Department of Buildings, which had denied the application for a permit unless the applicant obtain a permanent easement for light and ventilation from the Triborough Bridge and Tunnel Authority (hereinafter referred to as the6 ‘ Authority ”), by eliminating the requirement that an easement be procured from the Authority.
The proper determination of this proceeding depends upon whether the intervenor’s building site is a “ corner lot ” within the meaning of paragraph a of subdivision 31 of section 4 of the Multiple Dwelling Law. If it is not a ‘ ‘ corner lot ’ ’, the erection of a 20-story building thereon would violate the zoning laws, and the windows which are to be incorporated in the wall of the building facing the Tunnel Exit Roadway would be barred by the provisions of subdivision 2 of section 30 of the Multiple Dwelling Law.
Section 4 of the Multiple Dwelling Law (subd. 31, par. a), provides that “a 1 corner lot’ is a lot of which at least two adjacent sides abut for their full length upon streets or public places not less than forty feet in width ”. Concededly, the widths of East 36th Street and of the Tunnel Exit Roadway satisfy the requirements of said section. The only question to be determined is whether the roadway is a “ street ’ ’' or ‘1 public place ” within the meaning of the section.
The obvious purpose underlying the enactment of the sections (§4, subd. 31, par. a; § 30, subd. 2) was to insure adequate light and air for all the windows of a multiple dwelling. The meaning of the words “streets” and “public places” which are not expressly defined in the Multiple Dwelling Law must be determined in the light of those purposes. What may be a “ street ” or a “public place” for one purpose may not be such for another purpose.
Title to the land in the bed of the Tunnel Exit Roadway is in the City of New York, and the land is exempt from taxation or assessment. The Authority is a “ public benefit corporation ” (Public Authorities Law, § 552), which had been authorized to construct a tunnel under the East River together with such “ appurtenances, facilities and approaches as shall be necessary or convenient” (§ 553, subd. 9, par. [f]). The tunnel here involved is “an essential part of the public highway system ” (§ 566). It is a “public highway improvement” (New York City Tunnel Auth. v. Consolidated Edison Co. of N. Y., 295 N. Y. 467, 475). The Exit Roadway is given to the public generally and is used by many thousands of cars every day for street or *872 highway purposes. The public character of the roadway is unaffected by the fact that use thereof requires the payment of a toll (see Board of County Comrs. v. Chandler, 96 U. S. 205, 208). In New York Tunnel Auth. v. Consolidated Edison Co. (supra) Judge Fuld, referring to the Exit Roadway here involved, said (p. 476): “ Nor does the circumstance that tolls are charged in order to finance the improvement change either the character of that improvement or the character of the authority The lines and grades of the Tunnel Exit are indicated upon the City Map in the same manner as those of any street. The Board of Estimate on May 26, 1959, adopted such a map and amended the City Map accordingly.
Since the word “ street ” is not defined in the Multiple Dwelling Law, the definition contained in the New York City Charter is entitled to considerable weight. Subdivision 4 of section 291 of the charter provides that ‘ ‘ the term ‘ street ’ includes street, avenue, road, alley, lane, highway, boulevard, concourse, parkway, driveway, culvert, sidewalk, crosswalk, boardwalk and viaduct and every class of public road, square and place, except marginal streets ” (emphasis supplied).
It thus appears that the Tunnel Exit Roadway differs in no material respect from the roadways designated as streets on the City Map and commonly regarded as being streets. It is a public thoroughfare and title to the bed of which is in the City of New York. It was acquired for street purposes, to become part of the highway system of this city. The mere fact that administration of the Tunnel Exit Plaza and roadway is vested in the Authority rather than in the President of the Borough of Manhattan, who has charge of streets generally, is not sufficient in itself, to justify a holding that the Exit Roadway is not a “ street” within the meaning of the sections of the Multiple Dwelling Law which are here involved.
In New York Tunnel Auth. v. Consolidated Edison Co. of New York (supra) the New York Tunnel Authority, the predecessor of the Triborough Bridge and Tunnel Authority, took the position that ‘ ‘ the tunnel approaches are a part of the public highway ’ ’ and that the improvement of the banks of the river for approaches “ was made for an essential street purpose which was to connect the street systems of the two boroughs with the new subaqueous highway ”. The Court of Appeals upheld this contention saying (p. 475) that the tunnel and its approaches are “ plainly a public highway improvement ”. The court likened it to a “ street ” (p. 475).
If the Tunnel Exit Roadway is not a ‘1 street ” or “ public place ’ ’ within the meaning of the Multiple Dwelling Law definí *873 tion of a corner lot, the granting of an easement by the Authority, as required by the Superintendent of Buildings, could not make it such. On the other hand, if it is a “ street ” or a “ public place ”, the requirement that such an easement be obtained imposes an obligation unauthorized by statute and beyond the Superintendent’s power to exact.
The ease of Morelite Serv. Sta. v. Goldman (261 N. Y. 32) cited by the Authority is not in point. In that case, the question was whether the owner of land abutting upon a road used as an approach to and exit from a bridge possessed the “ conventional easement of access ” (p. 36) which it would possess if the roadway were a normal street. Here the question is whether the Tunnel Exit Roadway is a street for the purpose of determining a height to which intervenor may build upon an abutting site.
Counsel for the Authority has argued that a structure may be erected over the Tunnel Exit Roadway at some future date. This possibility is likewise present in the case of a conventional city street or avenue. Instances of this have in fact occurred on numerous occasions, in the form of overpasses, viaducts, bridge approaches, etc.
For the reasons indicated, this court is of the opinion that the Tunnel Exit Roadway is a “street” within the meaning of paragraph a of subdivision 31 of section 4 of the Multiple Dwelling Law and that intervenor’s building site is, therefore, “ corner lot ” as the term is defined by that section.
Furthermore, in the court’s view, the roadway is a “public pláce ’ ’ within the meaning of paragraph a of subdivision 31 of section 4. • Title to the bed of the roadway is in the City of New York. The roadway is thus publicly owned.' It is open to all members of the riding public who choose to pay a toll for its use. As previously pointed out, the charge of a toll does not affect its public character. The Exit Plaza formed by the roadway is also a “ place ”. “ Place ” is defined to include “ a particular portion of space, of definite or indefinite extent * * * the portion of space occupied by anything * 5 * now rare, an open space or square in a city or town * =:> * a short street, a court, etc.” (American College Dictionary). Comisel for the Authority concedes that the meaning of the words 1 ‘ public place ” varies in accordance with the object of the particular statute in which the words are used. Having in mind that the purpose of paragraph a of subdivision 31 of section 4 was to insure adequate light and air for windows of multiple dwellings, the' Exit Plaza and Roadway at the approach to the tunnel seems to the court to qualify as a “ public place ’ ’. Its public character and its openness give abutting dwellers the same assurance of *874 light and air as they would receive if the Plaza or a roadway be deemed a “ street ”. In Matter of Independence Terrace Corp. v. Board of Stds. & Appeals (N. Y. L. J., Jan. 18, 1962, p. 13, col. 3, Markowitz, J.) a public park was held to be a public place within the meaning of paragraph a of subdivision 31 of section 4 of the Multiple Dwelling Law.
The contention of the Authority that ‘ ‘ public places ’ ’■ must be of the same specific character as “ streets ” appears to be much too narrow. Indeed, this claim seems inconsistent with the Authority’s admission that “ a public park * * * has been construed as a public place. ’ ’ (Matter of Robbins, 189 N. Y. 422 [1907]; Matter of City of Rochester, 102 App. Div. 181.) The argument that the intervenor-respondent ‘ ‘ is estopped from asserting that the Tunnel Exit Plaza and Roadway are public places ’ ’ is predicated upon the claim that if they are public places, the city’s conveyance of the proposed building site to intervenor’s predecessor in title would be invalid. This does not necessarily follow. The Plaza and Roadway may be ‘ ‘ public places ” for the purposes of paragraph a of subdivision 31 of section 4 of the Multiple Dwelling Law without thereby necessarily becoming such for the purposes of a section of the charter prohibiting alienation of certain types of city-owned property.
In view of the conclusions reached, it is unnecessary to determine whether the Authority, which does not have title to the land in the bed of the Exit Roadway is an aggrieved person within the meaning of section 668e-1.0 of the Administrative Code of the City of New York.
Petitioner’s application for a restraining order is denied; the order of certiorari is vacated, the petition dismissed, and the determination of the Board of Standards and Appeals affirmed.