James J. Crisona, J.
This is an application by petitioners as alleged aggrieved persons within the meaning of section 668e-1.0 of the Administrative Code of the City of New York for judgment ‘ ‘ annulling and setting aside the * # * decision ’ ’ of the Board of Standards and Appeals of the City of New York (hereinafter “ Board ”).
The petition alleges as follows: Petitioners are the owners of real property adjoining that constituting the subject of this proceeding. On April 2, 1961 intervenor-respondent Adson Industries, Inc. (hereinafter “Adson”), filed plans for the construction of a building upon a portion of the subject lot. Said lot adjoins the Forest Hills side of Union Turnpike, which is separated from the Kew Gardens side by the parallel Interboro Parkway. The Queens Borough Superintendent of Buildings noted an objection to these plans on the ground that they called for the erection of a building exceeding one and one-half times the width of the Forest Hills side' of Union Turnpike, in violation of certain provisions of the Multiple Dwelling Law. The Commissioner of Buildings, in reviewing the action of the Borough Superintendent, determined that the allowable height should be based upon the width of both sides of Union Turnpike plus that of Interboro Parkway. Petitioners thereafter requested that the Borough Superintendent continue an objection to the proposed height of the building pursuant to certain provisions of the Zoning Resolution hereinafter discussed. That request was refused and said refusal formed the basis of petitioners’ initial appeal to the Board. Approximately two months after the appeal was filed, Adson’s amended application was approved by the Borough Superintendent and a building permit was issued. Immediately thereafter petitioners requested that the Borough Superintendent revoke his approval on the following grounds: (a) Adson had no authority to file plans since it was not the owner of the property and (b) the *282 height limitations of the Zoning Resolution had been violated. This request was also refused and petitioners’ appeal to the Board was amended to include an appeal from said refusal. The appeal was further amended to include petitioners’ claim that the Borough Superintendent’s approval of Adson’s application violated the automatic stay of all proceedings which became operative upon petitioners’ earlier perfection of their appeal. The Board denied petitioners’ appeal in all respects.
Both the Board and Adson, by separate notices of motion, have moved to dismiss the petition and sustain the Board’s determination.
Petitioners’ initial contention, i.e., that the Borough Superintendent’s approval of Adson’s plans and issuance of a building permit violated the automatic stay provided for in section 668 (subd. c) of the New York City Charter, is patently without merit. When petitioners attempted initially to perfect their appeal, the Borough Superintendent had not made a determination upon Adson’s application. Although section 666 (subd. 6, par. [a]) vests the Board with power to review “ any order, requirement, decision or determination ” of the Borough Superintendent, the just-quoted language should not be taken as permitting an infinite number of separate appeals in the same proceeding upon the numerous rulings made prior to the granting or denial of an application.
Petitioners’ remaining claims are that Adson, a mere contract vendee of the subject premises, had no authority to file plans, and that even if it had such authority, the Board’s approval of plans calling for the erection of a building exceeding the maximum allowable height is without warrant in law.
As to petitioners’ first claim: subdivision a of section C26-161.0 of the Administrative Code of the City of New York provides in part that “ Before the construction * * * of any structure # * * shall be commenced * * * the owner, or the registered architect or licensed professional engineer employed by the owner, shall submit to the superintendent a statement * * * describing the proposed work * * *. Such statement shall constitute an application for a permit.” Section C26-103.0 defines “ owner” as, among other persons, an “ owner or owners of the freehold of the premises or lesser estate therein” and a ‘ ‘ vendee in possession”. Whether, under the circumstances, the Board properly held that Adson was authorized by law to file building plans, without determining whether its contract with its vendor rendered it a purchaser entitled to possession, petitioners have not been aggrieved by such an omission. Matter of Curtin v. Deegan (137 Misc. 287) *283 was a proceeding by an adjoining property owner to compel the then Tenement House Commissioner to revoke a permit for the erection of an apartment house. It was there held that the question of whether the applicant was qualified as an owner could be raised only ‘1 by those asserting right of possession or title ” (p. 288).
A decision upon the last point raised by petitioners, i.e., that the Board’s action respecting the height of the proposed structure was unwarranted, requires analysis of several sections of the Zoning Resolution in effect prior to December 15, 1961 (hereinafter “Resolution”), pursuant to which Adson’s building plans were filed.
Subdivision (d) of section 8 of the Resolution provides that the height of any building erected in the district in which the subject property is located shall not exceed “seven-eighths times the width of the street” plus one and one-half feet for each foot that the building is set back from the street line. Subdivision (a) of section 9 provides, in pertinent part, that “ On streets less than 50 feet in width the same height regulations shall be applied as on streets 50 feet in width and * * * on streets more than 100 feet in width the same height regulations shall be applied as on streets 100 feet in width.” Each side of Union Turnpike is approximately 32 feet wide and, eoncededly, Adson’s proposed building, 99 feet high with a setback of approximately 15 feet, exceeds the height limitation calculated with respect to any one side or both sides together. Said proposed building does not, however, exceed the height limitation measured in relation to both sides plus the parallel Interboro Parkway, 40 feet wide, separating the two sides. It becomes necessary, therefore, to determine whether the width of Interboro Parkway may. properly be included as part of the width of the abutting street under subdivision (d) of section 8.
The term “ street ” is not defined in the Resolution. The phrase “width of the street” is defined in subdivision (c) of section 1 as “ the mean of the distances between the sides thereof within a block.” Prior to 1945, this definition included the following additional sentence: 1 ‘ Where a street borders a public place, public park or navigable body of water the width of the street is the mean width of such street plus the width measured at right angles to the street line, of such public place, public park or body of water.” In 1940 subdivision (z) of section 1 was added to the Resolution. It defined the term “ public park ” as including “ any publicly owned park, playground, parkway or roadway within the jurisdiction and control *284 of the Commissioner of Parks, other than parked strips or malls in a public street, the roadways of which are not within his jurisdiction and control.”
Respondents contend that although Interboro Parkway is under the jurisdiction of the Commissioner of Parks, the deletion of the additional sentence of subdivision (c) of section 1 cannot be taken as a prohibition against the use of the width of such parkway in determining allowable building height. They urge that the definition of public park was inserted into the Resolution in 1940 solely for the purpose of protecting “ playground[s] ”, “ parkway [s] ” and “ roadway [s] ” so included from certain specific incompatible uses identified in other parts of the Resolution, namely garages, filling stations and advertising signs. In this connection, they submit extracts from the notes of the City Planning Commission confirming that such was the intention. Respondents, citing other relevant notes of the commission, further urge that the purpose of deleting the additional sentence of subdivision (c) of section 1 in 1945, was to assure that the benefits derived from parks and other open areas would be preserved, and contend that Interboro Parkway has none of the characteristics of such parks or areas.
Clearly, when the term 1 ‘ public park ’ ’ was first defined in subdivision (z) of section 1 the city planners were unconcerned with height limitation. It is unnecessary to allude to the notes of the City Planning Commission relevant to that section in order to reach this conclusion since, as aforesaid, the second sentence of subdivision (c) of section 1 remained until five years after subdivision (z) of section 1 had become law. True, Interboro Parkway falls squarely within the definition of “ public park”. This does not mean, however, that said parkway — designated on the official City Map at all points solely as a roadway — may not also be part of the adjoining street as ££ street ” is used in subdivision (d) of section 8. (Cf. Matter of Triborough Bridge and Tunnel Auth. v. Foley, 34 Misc 2d 870, affd. 17 A D 2d 811, affd. 12 N Y 2d 915.) Had one of the purposes of subdivision (z) of section 1 been to specify those areas of the city that are not streets, it would seem that the terms ‘ ‘ public place ’ ’ and ‘£ navigable body of water ’ ’ or their equivalents, included within the now-deleted sentence of subdivision (c) of section 1, would have been incorporated into subdivision (z) of section 1.
In any event, to consider Interboro Parkway only as a public park would be to limit maximum allowable height without regard to the purposes of the revelant sections of the Resolution. The City Planning Commission, in commenting upon the dele *285 tion of the second sentence of subdivision (c) of section 1, indicated that it was its intention to eliminate the “ special benefits and privileges ” enjoyed by owners of property adjoining “parks and public places” and “impose appropriate restrictions upon such property in the interests of the users of open spaces, as well as the residents of the neighborhood and the City generally.” Surely the commission, in amending subdivision (c) of section 1, never intended to confer any benefit upon motorists. Were petitioners to prevail, however, owners of property abutting roads under the jurisdiction of the Commissioner of Parks, would be prevented from building to any height, even were there no nearby open public areas. The commission has found that a building seven eighths as high of the width of the adjoining street would not render nugatory the benefits otherwise derived from public areas. Adson’s proposed building hardly thwarts such a finding.
Respondents’ motions are, accordingly, granted and the petition dismissed.