Leon D. Lazeb, J.
In this article 78 proceeding, petitioner seeks to annul the grant of a special use permit by the respondent Board of Trustees of the Village of Lloyd Harbor to the Friends World College to renovate and use three former Nike site buildings located on the latter’s campus.
Petitioner’s target is the proposal of the college to renovate one of the buildings and lease it to the Huntington Township Art League (the “ League ”) for 10 years (at a rental calculated to pay for the renovation). The League, a nonprofit *190 membership corporation, plans to conduct art classes for town residents and students at the college although the premises will also be used for several annual art exhibits and bazaars projected for fund raising purposes.
The college’s 93-acre campus lies in the Residence A-l District of the Village of Lloyd Harbor in which there are permitted : ‘ ‘ Educational institutions only when authorized by the Board of Trustees in accordance with the provisions of Article IX of this ordinance and provided that the buildings and property of such institution,shall be used for bona fide educational purposes recognized by the Board of Regents of the State of New York.” (Lloyd Harbor Zoning Ordinance, art. V, § 5.0 [h].)
Section 9.0 of article IX of the zoning ordinance authorizes the Board of Trustees to grant a special use permit where the use is. not detrimental to the essential character, health, safety, morals or general welfare of the community and is consistent with the master plan.
The board’s power to “ authorize ” the use may be characterized as a special exception or special use permit (Hartnett v. Segur, 21 A D 2d 132) and the exercise of such power by a legislative body is administrative in nature (Matter of Rothstein v. County Operating Corp., 6 N Y 2d 728; Matter of Bar Harbour Shopping Center v. Andrews, 23 Misc 2d 894) at least to the extent that it is subject to review in an article 78 proceeding (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20; Matter of Sun Oil Co. v. Young, 37 A D 2d 969). The judicial function in such review is exhausted when there is found to be a rational basis for the conclusion reached (Matter of Lemir Realty Corp. v. Larkin, supra; Matter of Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534; Matter of Victory Markets v. Herman, 38 A D 2d 625; Matter of Leathersich v. Wade, 20 A D 2d 963). A special use permit may not be issued for a use prohibited or specifically proscribed by the zoning ordinance (Matter of Simensky v. Mangravite, 16 A D 2d 977, affd. 12 N Y 2d 908; Matter of Tidewater Oil Co. v. Mangravite, 38 Misc 2d 662; Matter of Barr v. Michaelis, 40 Misc 2d 968), and in fact such permit may be granted only for a use or improvement which is expressly permitted subject to approval by an official body (Szelega Enterprises v. Town of Vestal, 36 A D 2d 483; Hartnett v. Segur, supra).
Petitioner asserts, inter alia, that respondent’s action is ultra vires because the League is not a recognized educational institution as required by the ordinance and because, the lease implies *191 a commercial venture incompatible with residential use. With respect to his first assertion, petitioner has misread the ordinance. Its recognition criterion applies not to the educational institution itself but to the uses to which its property is put. Had the board intended to restrict the grant of special use permits to those institutions approved by the Board of Regents it could easily have done so (see the ordinances described in Matter of Paris v. Eisenberg, 35 Misc 2d 934 and in Matter of Merrick Community Nursery School v. Young, 11 Misc 2d 576). The Board of Regents is the head of the Education Department and is empowered to appoint a Commissioner of Education who serves as the administrative officer (Education Law, § 101). The Commissioner is charged with executing educational policies determined by the Regents (Education Law, § 305). The Commissioner’s regulations provide, inter alia, for a three-year sequence in the visual arts as part of the curriculum offered to students in the public high schools of this State (8 NYCRR 100.1 [b]). The regulations also mandate courses in the visual arts at the junior high school level (8 NYCRR 100.1 [d]) and in public day schools (8 NYCRR 100.1 [e]). The State’s public school system includes the Fiorello H. La Guardia High School of Music and Art in New York City, which provides intensive instruction in the arts. The Legislature has established, as State policy, the goal of insuring that the role of the arts “ play an ever more significant part in the welfare and education experience of our citizens ” (Executive Law, art. 19-1, § 526) and has provided for art instruction in continuing education schools (Education Law, § 4604). The list of degrees authorized by the Board of Regents includes, among .others, a Bachelor of Fine Arts and a Master of Fine Arts (8 NYCRR 3.50). Instruction in art is clearly an educational purpose recognized by the Board of Regents.
The League qualifies as an educational institution because its objective (“ to foster an application of the arts ”) has some educational value, it performs some educational function (84 C. J. S. Taxation, § 283) and it is organized exclusively for that purpose (Matter of Goldstein v. Mills, 185 Misc. 851, affd. 270 App. Div. 930). It should be distinguished from those organizations which have been denied special use permits on the ground that their activities are not educational (see Fremed v. Bayswater Park, 11 Misc 2d 1017 and Margo Operating Corp. v. Village of Great Neck, 129 N. Y. S. 2d 436 [summer camps]; Matter of Delpriore v. Ball, 281 App. Div. 214 [dancing school] ; *192 Village of East Hampton v. Mulford, 188 Misc. 1037 [riding academy]). The League retains a full staff of instructors and proposes to conduct art classes for adults and children for 35 weeks a year, at the rate of 22 classes per week with 15 to 156 participants in a 13-hour day (see Incorporated Vil. of Brookville v. Paulgene Realty Corp., 24 Misc 2d 790, affd. 14 A D 2d 575, affd. 11 N Y 2d 672).
As to petitioner’s contention that the lease to the League implies a commercial venture, the word “ commercial ” as used in the law of zoning denotes “ uses for profit ” (2 Anderson, American Law of Zoning, § 11.01). Both the League and the college are nonprofit organizations and they cannot be excluded from a residential area merely because they are privately sponsored (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508; Matter of Merrick Community Nursery School v. Young, 11 Misc 2d 576, supra). The fact that the League conducts occasional art sales and bazaars does not transform it into a commercial venture (Not-For-Profit Corporation Law, § 508; cf. Matter of Stoller v. Board of Zoning Appeals, 40 A D 2d 867); neither does the fact that it leases real property (Not-For-Profit Corporation Law, § 202, subd. [a] par. [4]). The renovation undertaken by the college as part of its integrated expansion program is a valid purpose where educational uses are permitted (see Matter of Concordia Coll. Inst. v. Miller, 301 N. Y. 189).
Petitioner urges that the community will be adversely affected by traffic congestion resulting from the League’s activities. The entrance to its building is only 1,000 feet from a point where children cross School Lane to enter an elementary school which is also the location of Little League games and various summer activities. A traffic survey made by the Traffic Safety Department of Suffolk County (submitted in a report by the Village Planning Board) shows that existing traffic volume on School Lane averages 760 vehicles per day while the increase generated by the League is projected at 400 vehicles for a total of 1,160 vehicles per day. The report concludes that the volume could go as high as 5,750 before a traffic signal would be warranted. While summer information would no doubt be useful, it is during those months that the school is closed and the surveys made in September and November are sufficient. Petitioner’s own lay traffic projections are mere speculation and not evidence on which a denial of the application could be based (see Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, supra). Factors bearing on public health, safety and welfare such as traffic hazards which might warrant denial of a special use permit for *193 a commercial use ordinarily will not suffice to deny an educational use (Matter of New York, Inst. of Technology v. Le Boutillier, 33 N Y 2d 125; Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, supra).
The board’s action is further attacked on the ground that the intended use was not explicitly described in the application contrary to section 9.1 (a), of the zoning ordinance. While the application states that renovation of one building is for the use of the League, the fact that the premises were to be leased for the purpose of conducting art classes appeared only in the advertised notice of hearing.
Although in Matter of Tannenbaum v. Incorporated Vil. of Thomaston (29 Misc 2d 511), failure to annex a building permit application was held to preclude the special exception granted, irregularities in the form of written zoning applications generally are not fatal, particularly if they are not prejudicial to parties opposing the application (2 Rathkopf, Law of Zoning and Planning, p. 41-6). Such provisions are directory in nature (Ames v. City of Pasadena, 167 Cal. App. 2d 510) and if the information is supplied prior to final board action the protesters are not denied procedural due process (Miller v. Planning Comm. of City of Torrance, 138 Cal. App. 2d 598). Here the building specifications were annexed to the applications and material subsequently submitted for the record cured whatever deficiency existed. Petitioner’s standing to object to technical defects in the application forms is doubtful (cf. Matter of Fleming v. Foley, 43 Misc 2d 280) particularly since he had full notice and had a full opportunity to be heard (cf. Levine v. Town of Oyster Bay, 46 Misc 2d 106; North Shore Beach Prop. Owners Assn. v. Town of Brookhaven, 115 N. Y. S. 2d 670).
Petitioner’s final argument is the accusation that some members of the board were predisposed to grant the permit as indicated by the remark of one of them that the college’s bankruptcy would be adverse to the village’s interest. Although the board’s action is considered administrative for the purpose of judicial review (Matter of Rothstein v. County Operating Corp., 6 N Y 2d 728, supra), it is in reality hybrid in nature (Matter of Bar Harbour Shopping Center v. Andrews, 23 Misc 2d 894, supra). As an administrative determination it may only be upset if it is unreasonable or arbitrary or capricious (Matter of New York Inst. of Technology v. Le Boutillier, 33 N Y 2d 125, supra). Educational use is in furtherance of the health, safety, morals and general welfare of the community (Matter of Concordia Coll. Inst. v. Miller, 301 N. Y. 189, supra) as is the renovation *194 of the dilapidated and abandoned Nike site buildings. The continued solvency of the college is not a capricious consideration and the finding that the ordinance standards have been met is not arbitrary. Insofar as the determination is legislative, petitioner ’s suggestions that the motives of the board members were improper are irrelevant for where a legislative body is performing a legislative function the motives of its members ate of no interest to the court (Hood v. Guaranty Trust Co. of N. Y., 270 N. Y. 17; Free Synagogue of Flushing v. Board of Estimate of City of N. Y., 35 A D 2d 599).
Here the special use permit is based on findings which disclose the basis for the action (Matter of Dun Roamin Corp. v. Larkin, 11 A D 2d 737) and are supported by substantial evidence in the record (Matter of Demisay, Inc. v. Petito, 33 A D 2d 910; Matter of Adams Holding Corp. v. Spitz, 17 A D 2d 853). The decision is not unreasonable or capricious (Matter of Shell Oil Co. v. Farrington, 19 A D 2d 555; Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, supra) and it must be sustained.
The petition is dismissed.