ROBERT H. BURGESS ET AL., APPELLANTS, v. OMAHAWKS RADIO CONTROL ORGANIZATION, A NONPROFIT NEBRASKA CORPORATION, ET AL., APPELLEES.

362 N.W.2d 27

Filed January 25, 1985.   No. 83-684.

Gregory R. Abboud and, on brief, Robert H. Burgess, for appellants.

Raymond M. Crossman, Jr., of Crossman, Norris & Hosford, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Plaintiffs-appellants, Robert H. Burgess and Maria Burgess, filed this action seeking to permanently enjoin the defendants-appellees, Omahawks Radio Control Organization (Omahawks), a nonprofit Nebraska corporation, and Louise Field Prugh, from operating a radio-controlled model aircraft flying site at 172d and Ida Streets in western Douglas County, Nebraska. Plaintiffs occupy a neighboring property and allege that the defendants' activities constitute both a private noise nuisance and a violation of the zoning ordinances of the city of Omaha. After a trial the lower court dismissed plaintiffs' petition. The plaintiffs then perfected this appeal, in which they contend that the trial court erred in failing to find that the Omahawks' activities constitute a nuisance and in failing to find that the Omahawks' activities violated the zoning ordinances of the city of Omaha.

This matter, being equitable in nature, is reviewed by this court de novo on the record, subject to the rules that (1) where credible evidence on material issues is in conflict, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another, and (2) where the trial court has viewed the premises, this court is required to consider any competent and relevant facts revealed by the view and any findings made by the court, provided that the record contains competent evidence to support the findings. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Darsaklis v. Schildt*, 218 Neb. 605, 358 N.W.2d 186 (1984). We note that the trial judge viewed the premises and that the record does not contain any findings which are specifically based on that view.

Generally, an owner of property has a right to make any use of it he sees fit. It is only where his use prevents his neighbors from the enjoyment of their property that an owner's use may be restricted. The burden rests on the one complaining to establish that the use being made of the property must

necessarily create a nuisance. *Prauner v. Battle Creek Coop. Creamery*, 173 Neb. 412, 113 N.W.2d 518 (1962). It is generally recognized that under certain circumstances noise may constitute a nuisance and be enjoined. Generally, noise is not a nuisance per se, but it may be of such a character as to constitute a nuisance in fact, which may serve as the basis of an action at law or in equity, even though it arises from the operation of a factory, industrial plant, or other lawful business or occupation. Whether noise is sufficient to constitute a nuisance depends upon its effect upon an ordinary, reasonable man, that is, a normal person of ordinary habits and sensibilities. Relief cannot be based solely upon the subjective likes and dislikes of a particular plaintiff, and must be based upon an objective standard of reasonableness. To justify abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. It is presumed, in the absence of evidence to the contrary, that a plaintiff has ordinary sensibilities. *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981).

With these legal principles in mind, the record reveals the following facts. Omahawks is a nonprofit Nebraska corporation with approximately 150 members. It has a lease with Louise Prugh to 160 acres of land on which members fly their model aircraft. The land is located at 172d and Ida Streets, in rural surroundings. According to the plaintiffs, the flying activities begin in early spring and continue, weather permitting, until late fall. Members can commence flying at 9 a.m. and must cease at dark except on Mondays, when they must cease at 6 p.m. Each aircraft flown at the field must be evaluated and certified by the Omahawks' noise abatement committee as being in compliance with the noise abatement criteria established by the Federation Aeronautique Internationale and the current standards presently enforced by the Occupational Safety and Health Administration. The field rules and noise abatement regulations have been disseminated to all members of the club, and these rules and regulations are strictly enforced.

In August of 1981 the plaintiffs purchased their residence at

178th and Ida Streets. The model aircraft flight pattern takes the planes no closer than four to six blocks from the plaintiffs' property. It is the contention of the plaintiffs that the sound, best described as a high-frequency humming which emanates from these model aircraft, constitutes a noise nuisance. Robert Burgess testified that as a direct result of this sound he suffers physical and mental difficulties such as depression, nausea, anxiety, insomnia, emotional distress, psychic pain, and idiopathic atrial fibrillation. Maria Burgess testified that as a result of the sound she suffers from insomnia, loss of appetite, and weight loss. Both plaintiffs testified that the noise disrupts their entire social life, destroys all enjoyment of their residence, and adversely affects their marital relations. The plaintiffs also adduced testimony from relatives and acquaintances that the sound is annoying.

Preceding the trial, Omahawks invoked the services of David Cyr, an audiologist, to conduct a noise study, which entailed the measurement of the noise produced by the aircraft. Two studies were conducted with the use of a sound-level meter. During the first study, Cyr took noise measurements on the loudest of seven airplanes. This plane was not equipped with a muffler, and at full throttle and downwind the following readings were registered: at 3 feet, 104 decibels; at 36 feet, 84 decibels; at 72 feet, 76 decibels. Cyr also checked the remaining airplanes, which were considerably quieter, and they ranged from 78 to 82 decibels at 36 feet and from 68 to 70 decibels at 72 feet. During the second noise study, Cyr conducted tests at three various sites with three airplanes at full throttle, both while the planes were stationary and while they were in the air. At a site just east of the plaintiffs' residence and between their residence and the aircraft flight pattern, the sound level was approximately 30 decibels both while the planes were in the air and on the ground. Cyr then walked due west from the airstrip, where the 40-decibel level was reached at 350 feet; walking north, the 40-decibel level was reached at 460 feet; and walking northeast, which was downwind, the 40-decibel level was reached at 600 feet. Cyr next drove to a farm northwest of the airstrip, where a 130-horsepower tractor was in operation. With full throttle and inside the cab, the noise was 80 decibels. Outside the cab, 3 feet

from the engine, it was 96 decibels. Six hundred feet northeast, and downwind from the tractor, the noise level was 60 decibels. Cyr concluded that the tractor was running about 35 percent louder than the airplanes. Cyr also testified that the noise level of the airplanes does not pose a hazard to hearing. These measurements can be compared with a normal conversational speech level at a 3-foot distance of approximately 60 to 70 decibels, whispered speech at about 30 decibels, typical traffic noise at about 85 decibels, and a power saw, which registers between 115 and 120 decibels.

Vernon Reed, who resides approximately one-fourth of a mile from the center of the aircraft flight pattern, and closer to the flying activity than the plaintiffs, testified that although he can hear the model aircraft, they do not bother him any more because they are less noisy since the institution of the Omahawks' noise abatement rules and because the aircraft fly less frequently. Dr. Robert Holcombe, who resides at a point further from the Omahawks' flying activity than do the plaintiffs, but downwind from the prevailing southwesterly winds, testified that he can occasionally hear the airplanes at his home, but the sound does not bother him. He testified that other sounds are more bothersome and annoying than the model aircraft, such as those of motorcycles and trucks, and tractors that plow at night.

Our diligent review of the record, taking into consideration such circumstances of this case as the character, volume, frequency, duration, time, and locality of the noise, leads us to the conclusion, also reached by the trial court, that the activities of the Omahawks, although annoying to the plaintiffs, do not rise to a level of private noise nuisance.

Concerning the alleged violation of the zoning ordinances, it is uncontested that the land in question is subject to S-2 Second Suburban District zoning restrictions of the city of Omaha, which in pertinent part provide: "A building or premises shall be used for only the following purposes: (1) The use regulations for this district are the same as those for the First Suburban District, except that: (a) Outdoor theaters, trailer camps, trailer parks, tourist camps, tourist parks, and motorized cart tracks shall not be permitted in this district." Omaha Municipal Code

§ 55-352 (1980). The use regulations for First Suburban District allow premises to be used for motorized cart, minibike, motor scooter, and motorcycle tracks, provided that a permit is obtained after a public hearing by the city council. Omaha Municipal Code § 55-332(14) (1980).

It is the plaintiffs' contention that the Omahawks' activities constitute a violation of the S-2 zoning restrictions, and as such the activities should be enjoined. The trial court, ostensibly under the erroneous belief that this cause of action stemmed from a prior zoning board of appeals decision in which an appeal to the district court was not properly perfected, declined to hear much of the evidence and arguments concerning the alleged violation. The trial court dismissed this cause of action without making any findings as to whether the Omahawks' activities violated the zoning ordinances.

Under Nebraska case law a private individual, with standing, may bring suit in the district court to enjoin an alleged violation of the zoning laws or ordinances. See, *Witzel v. Village of Brainard*, 208 Neb. 231, 302 N.W.2d 723 (1981); *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.*, 208 Neb. 110, 302 N.W.2d 379 (1981).

The lower court should have but did not decide whether the Omahawks' activities violate the zoning ordinances, and as such this cause must be reversed and remanded for such a determination.

Should the district court, upon remand, find that the Omahawks' activities do in fact violate the zoning ordinances, defendants are then free to seek a variance. See Neb. Rev. Stat. §§ 14-401 et seq. (Reissue 1983).

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.