LARRY R. KAISER ET AL., APPELLANTS, ROBERT ISENBERG ET AL., APPELLEES, V. WESTERN R/C FLYERS, INC., ET AL., APPELLEES.
477 N.W.2d 557

Filed December 6, 1991.   No. 89-486.

James T. Gleason, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellants.

Norman F. Bradshaw for appellee Western R/C Flyers.

Deborah D. McLarney, of Erickson & Sederstrom, P.C., for appellees Startzer.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

In this action, the plaintiffs Larry R. and Katherine Kaiser, Margaret Schraeder, and Anthony and Helen Stepanek sought to permanently enjoin the defendants, Western R/C Flyers,

Inc., and Jay and Elaine Startzer, from operating a model airplane airfield near the village of Springfield, Sarpy County, Nebraska. In their amended petition, the plaintiffs alleged that the noise generated by the flying of the model airplanes violated Springfield zoning ordinances, was a nuisance, violated their statutory right to privacy, and constituted a continuing trespass. The district court found that the plaintiffs failed to meet their burden of proof regarding the alleged violation of zoning ordinances, that the defendants' activities did not constitute a nuisance, that the statutes relating to the right of privacy did not apply to the facts as alleged, that Western R/C Flyers was guilty of an unintentional continuing trespass which should be enjoined based upon the payment of fines for any future trespasses, and that each party should pay its own costs.

The plaintiffs, except Robert and Donna Isenberg, have appealed, contending the district court erred (1) in finding that they failed to meet their burden of proving the defendants were using the real estate in violation of applicable zoning ordinances, (2) in finding that using the premises for operation of model airplanes did not constitute a nuisance, (3) in finding that the use of the premises by the defendants did not violate plaintiffs' statutory right to privacy, (4) in failing to enjoin the defendants from using the premises for a radio-controlled scale model airplane airfield, and (5) in taxing costs to the plaintiffs.

An action for an injunction sounds in equity. In the appeal of an equity action, the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Spire v. Strawberries, Inc., ante* p. 1, 473 N.W.2d 428 (1991); *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 362 N.W.2d 27 (1985).

The record shows that defendants Startzers own approximately 160 acres of land located within the zoning jurisdiction of the village of Springfield. The plaintiffs own property adjacent to the Startzer property. On January 2, 1973,

the Startzer property was zoned "A Agricultural Residential District," pursuant to a Springfield village ordinance. When the ordinance was passed, the Startzers used the land primarily to raise row crops. An airstrip has also existed on the Startzer property for 20 to 25 years. The airstrip was used infrequently and ceased being used for full size aircraft for approximately 2 years during the mid-1970's.

Defendant Western R/C Flyers is a domestic nonprofit corporation organized to promote the recreational flying of radio-controlled model airplanes. On November 13, 1980, the club leased 1 acre of the Startzer property as an airfield and club site for flying radio-controlled model airplanes. They built a shed on the property in 1983. The club has maintained a leasehold interest in the Startzer property and now pays $500 per year in rent. Startzers have also given the club permission to fly planes within the boundaries of the entire Startzer property. The flight area is an oval shape approximately 600 feet long and 100 to 120 feet wide. The planes that are flown are replicas of real aircraft, powered by small gas engines and a gasoline-type fuel.

The planes occasionally fly beyond the border of the Startzer property and over the plaintiffs' property. Plaintiff Anthony Stepanek produced the remains of 4 model airplanes which crashed on his property between 1982 and 1988 and testified he was aware of approximately 12 more airplanes that had crashed on his property. Larry Kaiser testified that he observed one plane overfly his property and saw a plane crash across the road from Margaret Schraeder's house in 1987, on property not owned by any party to this lawsuit.

The plaintiffs first contend that the operation of radio-controlled model airplanes on the Startzer property violates the Springfield zoning ordinances. Under these ordinances, the "principal" uses permitted in the "A Agricultural Residential District" are (1) agricultural farms, truck gardens, greenhouses, plant nurseries, orchards, grain storage facilities, and the usual agricultural farm buildings and structures; (2) single-family dwellings; (3) roadside stands offering for sale agricultural products produced on the premises; (4) churches, seminaries, and convents, including

residences for pastors and teachers; (5) public and parochial schools and colleges; (6) publicly owned and operated buildings and facilities such as community centers, auditoriums, libraries, and museums; (7) fire stations; (8) public parks and recreation areas, playgrounds, and forest and conservation areas, including commercial uses and campgrounds under franchise of county or state governmental agencies; (9) *private recreation areas and facilities, including lakes, ponds, country clubs, golf courses, and swimming pools*; (10) public utility distribution systems, substations, terminal facilities, and reservoirs; (11) railroads; (12) irrigation facilities; and (13) hospitals and eleemosynary institutions. No special permit is required for these principal uses.

The conditional uses allowed in agricultural residential districts include (1) private and commercial kennels and facilities for raising, breeding, and boarding of dogs and other small animals; (2) confined feeding of livestock and feedlots; (3) sanitary landfills; (4) radio and television towers and transmitters; (5) airports (defined as "any area which is used or is intended to be used for the taking off and landing of aircraft, including helicopters, and any appurtenant areas which are used or are intended to be used for airport building or facilities, including open spaces, taxiways, and tie-down areas"; aircraft are defined as "any contrivance, now known or hereafter invented, for use or designed for navigation of or flight in the air or outer space, including missiles"); (6) mobile home parks; (7) nonfarm single-family dwellings; (8) home occupations; (9) extraction and processing of rock, gravel and sand, clay, and dirt; (10) temporary trailers; (11) *commercial recreational areas, including facilities for fishing, shooting, hunting, auto racing, cycle clubs, bridle clubs, etc.*; (12) churches, seminaries, and convents, including residences for pastors and teachers; (13) commercial camping areas; (14) public and parochial schools and colleges; (15) publicly owned and operated buildings and facilities such as community centers, auditoriums, libraries, and museums and privately owned noncommercial museums and historic areas; (16) hospitals, nursing homes, and eleemosynary institutions; (17) billboards; and (18) signs.

Conditional uses of land or buildings, as specified for each zoning district, are subject to the issuance of a special use permit with the following exception:

> Where a building or structure in the use thereof, or use of land lawfully exists on the effective date of this ordinance, then such use is classified by this ordinance as an allowable conditional use in the zoning district where it is located. The existing building or structure and its use thereof, or the use of land where no building or structure is involved comprising such a conditional use, shall be considered a lawful conditional use, except a special use permit shall be required for any expansion of physical development for such conditional use . . . .

The defendants have not applied for a special use permit to operate a model airplane airfield on the Startzer property. The plaintiffs contend the defendants are required to obtain a special use permit because the lease of 1 acre by Startzers to the club constituted a commercial recreation area as defined in the ordinance. The defendants contend that their use of the land is that of a private recreation facility, which is a principal permitted use, and that they are not required to have a special use permit.

At this point, we note that the parties rely heavily on the testimony of expert witnesses in support of their respective interpretations of the Springfield zoning ordinances. We commented in *Sasich v. City of Omaha*, 216 Neb. 864, 347 N.W.2d 93 (1984), that expert testimony is relevant and admissible only if it tends to help the trier of fact understand the evidence or to determine a fact issue and that expert testimony concerning the status of the law does not tend to accomplish either of these goals. Expert testimony concerning a question of law is generally not admissible in evidence. See, *Sasich v. City of Omaha, supra*; Neb. Rev. Stat. §§ 27-401, 27-402, and 27-702 (Reissue 1989). The interpretation of a zoning ordinance presents a question of law, and we decline to consider any expert testimony as to what constitutes a "commercial" or a "private" recreational use under the Springfield zoning ordinances.

The zoning ordinances at issue in this case regulate the actual

use of or activity on the land, not the ownership thereof. Similarly, this court has said:

> Mere ownership of real property imposes no responsibility for a nuisance on it, unless the owner is instrumental in causing the nuisance. A tenant in possession is liable for a nuisance by him created on the premises of his landlord, but the landlord is not liable for such a nuisance created by his tenant, unless the landlord authorized or contributed to the causing or maintaining of the nuisance.

*City of Omaha v. Hugh Murphy Construction Co.*, 114 Neb. 573, 577, 208 N.W. 667, 668 (1926). The lease of 1 acre by Startzers to the club does not, in itself, constitute a "commercial recreation area" or a commercial use under the Springfield zoning ordinances. The use we are concerned with in this case involves the actual activities of members of the Startzers' tenant, Western R/C Flyers. The issue presented is whether the club is engaged in a private recreational activity or whether it is operating a commercial recreational area for purposes of the Springfield zoning ordinances.

The term "commercial," as used in the law of zoning, denotes a use for profit. See, e.g., *Imbergamo v. Barclay*, 77 Misc. 2d 188, 352 N.Y.S.2d 337 (1973). The record shows, however, that Western R/C Flyers is a nonprofit corporation and does not derive a financial profit from its use of the Startzer property. The Springfield zoning ordinances specifically include "private recreation areas and facilities, including lakes, ponds, country clubs, golf courses, and swimming pools" as uses permitted on the land in question as a matter of right. Interpreting a similarly worded ordinance, the court in *Henderson v. Zoning Appeals Bd. of Jefferson Parish*, 328 So. 2d 175, 178 n.5 (La. App. 1975), *cert. denied* 331 So. 2d 474 (La. 1976), noted that in this context, private recreational use was not limited "to use, for example, as a back yard swimming pool by an individual and members of his family and guests."

We conclude that Western R/C Flyers has been using the Startzer property for private recreational purposes and not for commercial profit. Under the Springfield zoning ordinances, the land may be used for such purposes as a matter of right, and the defendants were not required to obtain a special use permit.

Since the defendants were engaged in a private recreational activity, we need not address the plaintiffs' contentions that the defendants were operating an "airport" in violation of the zoning ordinances.

The plaintiffs next contend that the noise generated by the model airplanes constitutes a nuisance. In *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 101-02, 362 N.W.2d 27, 29 (1985), we said:

> The burden rests on the one complaining to establish that the use being made of the property must necessarily create a nuisance. . . . It is generally recognized that under certain circumstances noise may constitute a nuisance and be enjoined. Generally, noise is not a nuisance per se, but it may be of such a character as to constitute a nuisance in fact, which may serve as the basis of an action at law or in equity, even though it arises from the operation of a factory, industrial plant, or other lawful business or occupation. Whether noise is sufficient to constitute a nuisance depends upon its effect upon an ordinary, reasonable man, that is, a normal person of ordinary habits and sensibilities. Relief cannot be based solely upon the subjective likes and dislikes of a particular plaintiff, and must be based upon an objective standard of reasonableness. To justify abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. It is presumed, in the absence of evidence to the contrary, that a plaintiff has ordinary sensibilities.

On this issue, the plaintiffs testified that planes were flown over the Startzer property every day of the year, weather permitting, and that the planes made an irritating high-pitched "winding" [sic] noise. Apparently, anywhere from one to seven planes can be flown at any one time. The plaintiffs and one other witness testified that the noise caused them to become anxious or frustrated, thereby causing stomach problems, headaches, and/or loss of sleep. They also testified that the flying of model airplanes near or over their property prevented them from enjoying gardening, working in the home, or otherwise enjoying their property. Defendant Jay Startzer and four other

abutting property owners or neighbors testified, however, that they were not bothered by the airplanes or the noise. There was no evidence presented regarding the measurement of sound levels in decibels.

Having reviewed the record de novo, and taking into consideration the circumstances of this case and our decision in *Burgess v. Omahawks Radio Control Org., supra,* we conclude that the activities of Western R/C Flyers, although annoying to the plaintiffs, do not rise to the level of a private noise nuisance.

The plaintiffs finally contend that the defendants have violated their statutory right to privacy. Neb. Rev. Stat. § 20-203 (Reissue 1987) provides: "Any person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." This statute is similar to Restatement (Second) of Torts § 652 B at 378 (1977), which provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." The Restatement, *supra* at comment *a.* at 378, states that

> [t]he form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

The illustrations of invasions of privacy accompanying § 652 B encompass such situations as a reporter's entering a hospital room and taking the photograph of a person suffering from a rare disease; "window peeking" or wiretapping by a private detective; obtaining access to a person's bank records pursuant to a forged court order; or the continuance of frequent telephone solicitations. It does not appear that § 20-203 was designed to protect persons from the type of alleged intrusion involved in this case. In any event, the plaintiffs have failed to

establish that the defendants' activities constitute a nuisance or rise to the level of being "highly offensive to a reasonable person." The plaintiffs' assignment of error is without merit.

In its decree, the trial court found that there was evidence that the defendant Western R/C Flyers had allowed model airplanes to fly over the airspace of the plaintiffs, although the trespassing was infrequent and not done intentionally.

Notwithstanding that finding, the trial court enjoined the defendant Western R/C Flyers from causing *its* model airplanes to fly over the airspace immediately above the plaintiffs' property or to land on the plaintiffs' property. The trial court further provided that any future trespass by Western R/C Flyers would constitute a violation of the injunction, which might be enforced by any plaintiff upon the filing of an application to determine a fine. The trial court then ordered that "[t]he fine shall be $10.00 for each airspace violation and $25.00 for each time a plane has landed on any of Plaintiffs' property."

There is no cross-appeal, and the defendant Western R/C Flyers in its brief states that the remedy fashioned by the district court should be upheld. For that reason we do not consider or make any determination in regard to that part of the decree.

The judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., participating on briefs.